

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
04/26/2019

| | | |
|---|---|---|
| IN RE: | § | |
| KATIE A SMITH; aka SMITH | § | CASE NO: 16-30718 |
| Debtor(s) | § | |
| | § | CHAPTER  13 |

## <u>MEMORANDUM OPINION</u>

Americredit Financial Services, Inc. filed an objection to Katie Smith's amended modification to her confirmed chapter 13 plan.  On December 13, 2018, the Court overruled Americredit's objection, and asked the parties to brief the issue of whether a chapter 13 plan modification becomes effective at the time of filing, upon the Court's approval, or at some other time.  Despite the Court's ruling, Americredit maintains that under res judicata, Ms. Smith cannot retroactively modify her confirmed plan to alter her contract interest rate or change the disbursing agent.  Americredit further contends that the language of 11 U.S.C. § 1329(a) does not allow Ms. Smith's proposed changes.  In the alternative, Americredit proposes the date of filing as the time at which the modification would take effect if such modification were allowed.

The Court approves Ms. Smith's modified plan, which is effective retroactively to the date it was filed.

### <u>Background</u>

On November 19, 2015, Ms. Smith entered into a Motor Vehicle Retail Installment Sales Contract with Americredit Financial Services for the purchase of a 2016 Chrysler 200 for her personal use.  (ECF No. 43-2 at 1).  The amount financed was $31,722.98 at a 15.50% per annum interest rate.  (ECF No. 43-2 at 1).  The loan was payable in 72 monthly installments beginning on December 19, 2015.  (ECF No. 43-2 at 1).

On February 8, 2016, Katie A. Smith filed chapter 13 bankruptcy. (*See* ECF No. 1). On March 2, 2016, Americredit Financial Services, Inc. filed a proof of claim in Ms. Smith's bankruptcy case, alleging a right to repayment of $31,445.64 based on Americredit's security interest in the vehicle. (*See* ECF No. 2 at 7; ECF No. 63 at 2). At the time Americredit filed its proof of claim, Ms. Smith was current on her loan payments. (ECF No. 63 at 2). The Court confirmed Ms. Smith's chapter 13 Plan on April 26, 2018. (*See* ECF No. 28). Pursuant to the Plan, Ms. Smith was to act as the disbursing agent for Americredit's claim. Accordingly, Ms. Smith was to make payments to Americredit directly "in accordance with [their] pre-petition contract[] . . . ." (ECF No. 2 at 6).

Ms. Smith eventually fell behind on her payments to Americredit. (ECF No. 65 at 1; ECF No. 64 at 2). As a consequence, Americredit filed a Motion for Relief from the Automatic Stay on August 16, 2018. (*See* ECF No. 43). Americredit alleges that at the time of its Motion, Ms. Smith had made direct payments to Americredit in the amount of $2,034.78 pursuant to the Plan. (ECF No. 64 at 2).

Americredit's Motion was resolved through an Agreed Order Conditioning the Automatic Stay, which the Court approved on September 14, 2018. (*See* ECF No. 47). Under the agreement, the parties stipulated that the total post-petition, delinquent amount owed was $2,253.62. (ECF No. 47 at 1). The agreement required that Ms. Smith complete one of the following actions within 14 days from the date of entry: (i) pay the entire stipulated post-petition, delinquent amount of $2,253.62, or (ii) file a Plan modification to include an interest rate of 6.0% on the agreed post-petition, delinquent amount owed. (ECF No. 47 at 1). The agreement further required that Ms. Smith resume regular payments on or before October 19, 2018. (ECF

No. 47 at 1).   Whether the payments were to be made directly or through the trustee was dependent on the terms of the modified plan.  (ECF No. 47 at 1).

On September 20, 2018, Ms. Smith filed a proposed plan modification.  (*See* ECF No. 49).  The Modification provided that the Trustee would pay Americredit Financial Services $2,630.43 at 6.0% interest.   On October 23, 2018, Ms. Smith filed an amendment to the Modification.  (*See* ECF No. 50).  The Amended Modification corrected the cure amount to reflect the stipulated amount of $2,253.62 found in the Agreed Order.  (ECF No. 50 at 1).  The Amended Modification, like the original Modification, also provided payment of the post-petition, delinquent amount owed through the Trustee.  (ECF No. 50 at 8).[1]  Americredit did not object to the Amended Modification "because it comported with the terms of the Agreed Order." (ECF No. 64 at 3).  The Court denied the proposed Amended Modification on November 13, 2018.  (November 13, 2018 Hearing at 9:32 a.m.).  The Court's denial was based on a lack of explanation for the Amended Modification.   (November 13, 2018 Hearing at 9:32 a.m.). Additionally, the Court noted that the proposed modification failed to reflect distribution and payment of both the original amount and the arrearage amount to be made by the Trustee as was customary when a default occurs.  (November 13, 2018 Hearing at 9:32 a.m.).

In response to the Court's denial, Ms. Smith filed a Second Modification on November 26, 2018.  (*See* ECF No. 55).  The Second Modification provided for payment of Americredit's entire remaining claim of $23,772.63 at 6.0% interest over 25 months.[2]  (ECF No. 55 at 7).  It further provided that the Trustee would disburse all payments due.  (ECF No. 55 at 17).  On December 6, 2018, Americredit filed an Objection to Ms. Smith's Second Modification.

---

[1] Both the original and the amended modification provided for the payment of the original amount to be made directly by Ms. Smith to Americredit.  (*See* ECF No. 49 at 7; ECF No. 50 at 8).

[2] Under the terms of the Second Modification, month 34 is the "starting month" and month 59 is the "ending month."  (ECF No. 55 at 7).

(*See* ECF No. 59).   The Objection alleged that Ms. Smith could not amend her Plan to reduce Americredit's contract interest rate from 15.5% to 6.0% because the parties were bound by the terms of the Plan, and because "[n]othing in 11 U.S.C. § 1329 allows [Ms. Smith] to modify a confirmed plan to change the interest rate provided for in the Plan."   (ECF No. 59 at 2).[3] Americredit further argued that the Second Modification fails to provide for adequate protection as required by Bankruptcy Local Rule 4001-1(e)(6).   (ECF No. 59 at 2).

The Court held a hearing on Ms. Smith's Second Modification on December 13, 2018. (*See* ECF No. 62).   At the hearing, the Court overruled Americredit's objection to Ms. Smith's Second Modification.   (December 13, 2018 Hearing at 9:30 a.m.).   The Court found there was no res judicata issue because § 1329 allows for plan modifications at any time, so long as the Plan meets the requirements of 11 U.S.C. § 1325.   (December 13, 2018 Hearing at 9:30 a.m.). However, the Court reserved ruling on whether the Second Modification was effective on the date of the filing of the proposed modification, upon approval by the Court, or on some other date.   The Court requested further briefing from the parties addressing when a modification becomes effective.   (December 13, 2018 Hearing at 9:32 a.m.).

*Parties' Subsequent Briefing*

Americredit objects to Ms. Smith's Second Modification on the basis of (i) res judicata principles and (ii) statutory interpretation.   In its subsequent briefing, Americredit maintains that Ms. Smith's Second Modification should not be allowed because she is bound by the terms of her confirmed Plan, which allegedly binds Ms. Smith to the contractual interest rate of 15.5% on Americredit's claim.   (ECF No. 64 at 5).   Americredit argues that under res judicata, Ms. Smith is estopped from altering both the interest rate, and the disbursing agent by the terms of her

---

[3] The contract interest rate can be found in the sales contract attached to Americredit's Motion to Lift the Automatic Stay.  (*See* ECF No. 43-2).

Confirmed Plan.  Specifically, Americredit indicates that Ms. Smith cannot modify the Plan to name the Trustee as the disbursing agent for its claim, given that the Plan required direct payment from Ms. Smith.  (ECF No. 64 at 7–9).

The second prong of Americredit's argument centers on the language of § 1329. Americredit argues that the statute's language does not allow or account for Ms. Smith's Second Modification—reducing the interest rate on its claim post-confirmation.  (ECF No. 64 at 10–12). Specifically, it claims that modifying the amount of payment as set out in § 1329 includes nothing "more than [a change to] the monthly payment to extend or reduce the *time* the claim was paid."  (ECF No. 64 at 11) (emphasis added).[4]  In other words, Americredit reads § 1329 as stating that modification of a monthly payment pursuant to § 1329(a) encompasses only a reduction or extension of time, not amount.  Tied to this argument is prejudice to creditors "who cannot move to modify a plan under § 1329(a)(1)."  (ECF No. 64 at 12).

Finally, "Americredit acknowledges that the Southern District Local Bankruptcy Rules do contemplate . . . situation[s] where the debtor may amend the plan to change from direct payments to payments through the Trustee."  (ECF No. 64 at 13).  Americredit, however, maintains that "there is a distinct quid pro quo for such a change" in the form of adequate protection.  (ECF No. 64 at 13).  Citing Bankruptcy Local Rule 4001-1(e)(6), Americredit argues that it is entitled to "a lump sum of $1,400.00 at or before the time of the confirmation" of the Second Modification proposed by Ms. Smith, given the four monthly payments she missed prior to her first proposed modification.  (ECF No. 64 at 13).

Ms. Smith's briefing relies on this Court's previous ruling, granting her Second Modification.  (*See* ECF No. 65).  Ms. Smith's argument also focuses on § 1329(a)'s language

---

[4] "In other words, . . . if a debtor proposed paying a claim over 36 months but then lost his or her job, they could use § 1329 to reduce the monthly payment so as to pay the claim over 60 months (assuming such change did not run afoul of § 1325(a)(5)(B)(iii)(I))."  (ECF No. 64 at 11).

but adopts the opposite view of Americredit.  (*See* ECF No. 65).  She indicates that not only is such post-confirmation modification allowed, but that Americredit has benefitted from the high interest rate provided for under the original Plan from February 8, 2016 to November 26, 2018. (ECF No. 65 at 2).  Ms. Smith further contends that, because approval of modifications under § 1329 is an equitable decision, the effective date of interest is November 26, 2018—the date her Second Modification was filed.  (ECF No. 65 at 2).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

### I.   11 U.S.C. § 1329(a)

Even as Americredit argues that a "confirmed Chapter 13 plan is res judicata," it acknowledges that "[s]ection 1329(a) of the Bankruptcy Code creates a statutory exception to the binding effect of a confirmed chapter 13 plan because it authorizes certain post-confirmation modifications to such a plan."  (ECF No. 64 at 6) (citations omitted).  Its argument hinges, however, on the premise that "the exception is a limited one—it applies only to those modifications *expressly authorized* by section 1329(a)."  (ECF No. 64 at 6) (citations omitted) (emphasis added).  The Court agrees that a plan may only be modified in accordance with § 1329(a) but disagrees with Americredit's tortured reading.  Ms. Smith's original Plan provided for payment by her to Americredit.  Because she missed several direct payments, she may now modify the payments to Americredit by "increase[ing] or reduc[ing] the amount of payments on claims of a particular class provided for by the plan" in accordance § 1329(a)(1); *see In re*

*Mendoza*, 11 F.3d 1264, 1268 (5th Cir. 1997) ("[B]ankruptcy courts are empowered to modify a debtor's plan to include postpetition arrearages arising from a secured loan . . . ."). She must do so in a manner that comports with § 1325(a). 11 U.S.C. § 1329(b)(1). In her proposed Second Modified Plan, Ms. Smith changes the payment stream to the holders of a particular class of claims. She also alters (i) the interest rate in accordance with § 1325(a)(5)(B); and (ii) the disbursing agent in as manner consistent with 11 U.S.C. § 1322(a)(1). Consistency with § 1322(a)(1) is explicitly permitted by § 1329(b).

A chapter 13 plan, once confirmed, is binding on all parties. 11 U.S.C. § 1327(a). However, the Bankruptcy Code expressly allows for modification of a previously confirmed chapter 13 plan. 11 U.S.C. § 1329. "Modification is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly." *Meza v. Truman (In re Meza)*, 427 F.3d 874, 877 (5th Cir. 2006). While some circuits continue to require an "unanticipated" and "substantial" change in circumstances before permitting modification of a chapter 13 plan, the Fifth Circuit does not. *Id.* at 877–78; *see also In re Hernandez*, 282 B.R. 200, 205 (Bankr. S.D. Tex. 2002) ("Clearly, a chapter 13 plan was intended to allow for adaption to changing circumstances. The need for a plan confirmation to have a final, definitive effect in chapter 11 does not necessarily apply to chapter 13.").

Modification of a previously confirmed chapter 13 plan is governed by § 1329. Section 1329(a) provides that a chapter 13 plan "may be modified, upon request of the debtor, the trustee, or the holder of an allowed secured claim." A plan may be modified to: (1) increase or reduce *plan payments* on a particular claim; (2) extend or reduce the *time* for plan payments; (3) alter the distribution to a creditor under the plan to account for nonplan payments made to that creditor; *or* (4) reduce the amount to be paid under the plan by the amount the debtor pays to

purchase health care insurance (subject to certain provisos and exceptions).  § 1329(a)(1)–(4) (emphasis added).  Post-confirmation modifications must comply with the requirements for plan confirmation set out in 11 U.S.C. §§ 1322(a) and 1325(a) and may treat claims as permitted by 11 U.S.C. §§ 1322(b)(2) and 1323(c).  Additionally, 11 U.S.C. § 1322(b)(11), as made applicable to plan modifications by § 1329(b)(1), permits a modified plan to "include any other appropriate provision not inconsistent with the [Bankruptcy Code]."  *See also Hernandez*, 282 B.R. at 206 (concluding that, pursuant to § 1322(b)(11), "modification may contain any provision not expressly prohibited" by the Bankruptcy Code).  The modified plan is effective as of the date that it is filed unless and until the Court disapproves of the modified plan.  *In re Santillan*, No. 15-35753, 2018 WL 4674573, at *3 (Bankr. S.D. Tex. Sept. 26, 2018); *see* § 1329(b)(2).

a.  *Americredit reads 11 U.S.C. § 1329(a)(1) out of the statute*

Although Americredit acknowledges the limited exceptions created by § 1329(a) to post-confirmation modifications, it contends that modifying the contract interest rate post-confirmation is not explicitly contemplated by § 1329(a).  Americredit draws a comparison between courts that have denied motions to modify a plan to surrender collateral to argue that this Court should similarly deny Ms. Smith's motion to modify her Plan interest rate post-confirmation.  Americredit insists that § 1329(a) "only permits modification of the **amount** or **timing** of payment," and that in "altering the interest rate, the debtor is doing more than simply modifying the amount or timing of payment" of its claim.  (ECF No. 64 at 11) (citing *In re Ramos,* 540 B.R. 580, 591 (Bankr. N.D. Tex. 2015) (citation omitted)).  Americredit insists that modifying the amount of payment on a claim includes only changing "the monthly payment to extend or reduce the *time* the claim was paid."  (ECF No. 64 at 11) (emphasis added) (citations

omitted).  Americredit, however, reads the statute incorrectly—it adds an "and" instead of the disjunctive word "or."

When analyzing a statute, the Court begins its analysis with the plain language of the statute itself.  *See United States v. Ron Pair*, 489 U.S. 235 (1989) (highlighting a court's duty to interpret a statute according to its plain language).  "[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"  *Id*. at 241 (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).  In construing a statue, we are obliged to give effect, if possible, to every word Congress used.  *United States v. Menasche*, 348 U.S. 528, 538–39 (1955).  Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise . . . ."  *See FCC v. Pacifica Found.*, 348 U.S. 726, 739–40 (1978); *see also Quindlen v. Prudential Ins. Co. of Am.*, 482 F.2d 676, 879 (5th Cir. 1973) ("[A]s a general rule, the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately.  Hence, language in a clause following a disjunctive is considered inapplicable to the subject matter of the preceding clause.") (citations omitted).

Section 1329 states, in relevant part that, "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to: (1) increase or reduce the *amount of payments* on claims of a particular class provided for by the plan; [or] (2) extend or reduce the *time* for such payments . . . ."  § 1329(a)(1)–(2) (emphasis added).  Although not cited in full here, the four alternatives set out in § 1329(a), are separated by the disjunctive "or."  *See* § 1329(a)(1)–(4).  The alternatives listed in § 1329(a) are to be treated separately.  *Quindlen,* 482 F.2d at 879.  It follows that under the plain language of § 1329, a debtor may modify a plan post-

confirmation to not only extend or reduce time for payment, but also, separately, to increase or reduce the amount of payments on a claim.

As mentioned above, Americredit disagrees with this reading of the statute. It argues that subsections (a)(1) and (a)(2) must be read together, such that the modification of a monthly payment should only encompass a reduction or extension of time. (ECF No. 64 at 11). Americredit provides the following example to explain its interpretation of subsections (a)(1) and (a)(2): "[I]f a debtor proposed paying a claim over 36 months but then lost his or her job, they could use § 1329 to reduce the monthly payment so as to pay the claim over 60 months . . . ." (ECF No. 64 at 11). Americredit is correct. However, Americredit's example only accounts for a modification of the *time* required for repayment. By extending the *time* of payment over a greater number of months, Americredit's example would proportionately reduce the *amount* of each monthly payment. Time of payment is only accounted for in subsection (a)(2). *See* § 1329(a)(2).

While it is true that extending the amount of time for payment will inevitably reduce a debtor's monthly payment amount, the converse is not necessarily true. A debtor could "reduce the *amount* of payments on claims of a particular class" without having to extend or reduce the *time* for such payments. *See* § 1329(a)(1) (emphasis added).[5] The plain language of the statute provides for such effect by placing the disjunctive "or" between the four subsections—any one of the four alternatives listed in § 1329(a) may be used to modify a plan post-confirmation. *See Pacifica Found.*, 348 U.S. at 739–40 ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise . . .

---

[5] "Section 1329(a)(1) provides that the chapter 13 debtor, trustee, or holder of an unsecured claim may propose to increase or decrease the aggregate amount of the payments, that is, the percentage payable, on claims belonging to one or more classes designated by the confirmed plan." 8 COLLIER ON BANKRUPTCY ¶ 1329.04[1] (Richard Levin & Henry J. Sommer eds., 16th ed).

.").  Americredit's argument—that § 1329 is meant solely to "reduce a monthly payment to extend or reduce the time the claim [is] paid" reads subsection (a)(1) out of the statute.  (ECF No. 64 at 11).  Accordingly, Americredit's reading of the statute would run contrary to the ordinary-meaning rule, which mandates "that every word and provision . . . be given effect (*verba cum effectu sunt accipienda*)."  *In re Crawford*, No. 15-53097, 2016 WL 4089241, at *2 (W.D. Tex. Jul. 22, 2016).

In deference to Americredit's arguments, it is true that § 1329(a) sets out the purpose of a proposed modification; it does not set out the means to accomplish that purpose.  The means are governed by § 1329(b) and are evaluated below.

### b.  *Modifications under § 1329(a)*

Post-confirmation plan modification entails three basic requirements.  *In re Fayson*, 573 B.R. 531, 534 (Bankr. D. Del. July 13, 2017).  First, the modification must serve one of the purposes set forth in § 1329(a).  *Id*.  Second, the modification must comply with the requirements for plan confirmation set out in 11 U.S.C. §§ 1322(a) and 1325(a) and may treat claims as permitted by 11 U.S.C. §§ 1322(b)(2) and 1323(c).  *Id*.  Third, the modification cannot extend the payment period beyond five years after the plan payment was due and cannot extend the original commitment period of the debtor's disposable income except for cause.  *Id*. (citing 11 U.S.C. § 1329(c)).  The plan as modified becomes the plan unless, after notice and hearing, such modification is disapproved.  *Id*.  As noted above, the first requirement is met—Ms. Smith seeks to increase or reduce the amount of payments on her claim to Americredit pursuant to § 1329(a)(1).  The third requirement is not at issue before the Court.  Accordingly, the Court must look to the satisfaction of the second requirement.

"Qualifying debtors may submit to a bankruptcy court a plan that modifies the rights of secured and unsecured creditors." *In re Dale*, No. H-07-32451, 2008 WL 4287058, at *2, (S.D. Tex. Aug. 14, 2008). As mentioned above, section 1329(b)(1) requires that modifications under § 1329(a) meet the standard for plan confirmation set out in § 1325(a). *Id.* ("The court will confirm the plan so long as it satisfied the requirements of 11 U.S.C. § 1325(a)."); *see Fayson*, 573 B.R. at 534 (noting that "[t]his makes sense, as the Code does not allow a debtor to do in a modified plan what she could not do first under a confirmed plan"). Under § 1325(a), a debtor enjoys three separate options regarding secured claims under a Chapter 13 plan. *Fayson*, 573 B.R. at 536. First, a debtor may do anything otherwise permitted under the Code, so long as the creditors accept the plan. *Id.*; *see* § 1325(a)(5)(A). Second, a debtor may retain the collateral, subject to the creditor's retention of the lien "until either the debt is repaid under the plan or until the debtor receives a discharge, whichever occurs first, and the debtor pays adequate protection payments to the secured creditor, the total of which must not be less than the allowed amount of the claim as of the effective date of the plan." *Dale*, 2008 WL 4287058, at *2; *see* § 1325(a)(5)(B). Finally, a debtor may surrender the collateral to a secured creditor. *Fayson*, 573 B.R. at 536; *see* § 1325(a)(5)(C). "The Code's limiting effect on modification does not stop a debtor from proposing a modification that selects another § 1325(a) option, so long as that option would have been available at the time the original plan was confirmed." *Id.*

Here, Ms. Smith chose to retain the collateral—the vehicle. Accordingly, § 1325(a)(5)(B) applies, and provides that the value of the property "to be distributed under the plan . . .[cannot] be less than the allowed amount of such claim." In essence, Ms. Smith must provide Americredit with the present value of their claim under the Plan. *Till* governs what interest rate is required to meet the confirmation requirements of § 1325(a)(5)(B). *In re*

*Montemayor*, No. 10-36990, 2010 WL 5315814, at * 1 (Bankr. S.D. Tex. 2010).   Thus, to comply with the requirements under § 1325(a)(5)(B), Ms. Smith must set forth an appropriate interest rate that complies with *Till* in her Second Modification.   In this case, Americredit has not disputed that the interest rate set forth by Ms. Smith under the Second Modification is appropriate under *Till*.   *See* 8 COLLIER ON BANKRUPTCY ¶ 1329.04[1] (Richard Levin & Henry J. Sommer eds., 16th ed) ("The trustee or party whose rights are adversely affected by the modification may object to it on the grounds that the modification renders the plan out of compliance with the requirements for plan confirmation.").   Rather, Americredit argues that the modification as a whole should not be allowed.   Americredit is mistaken.   Under the statute, Ms. Smith may modify her confirmed plan to increase or reduce the plan payments on Americredit's claim in accordance with § 1329(a)(1) and must pay at least the *Till* interest rate in accordance with § 1325(a)(5)(B).

     *c.  Res Judicata Principles & Prejudice to the Creditor*

     Americredit does not contest that Ms. Smith was allowed to alter the contract interest rate at the time of confirmation.   Rather Americredit takes the position that res judicata principles and prejudice to the creditor preclude altering the contract interest rate at the time of plan modification.   (ECF No. 64 at 9–11 (relying on *In re Morrow*, 397 B.R. 876 (Bankr. N.D. Ohio 2008))).

*Res Judicata*

     A chapter 13 plan, once confirmed, is binding on all parties.   § 1327(a); *see* 8 COLLIER ON BANKRUPTCY ¶ 1329.02 (Richard Levin & Henry J. Sommer eds., 16th ed) (noting "[t]he confirmed plan is *res judicata* as to all such issues" that could have been raised at the confirmation hearing).   However, the Bankruptcy Code expressly allows for modification of a

previously confirmed chapter 13 plan pursuant to § 1329.  "Modification is based on the premise that, during the life of the plan, circumstances may change, and the parties should have the ability to modify the plan accordingly."  *In re Meza*, 427 F.3d at 877; *see In re Hernandez* 282 B.R. at 205 ("Clearly, a chapter 13 plan is intended to allow for adaption to changing circumstances.  The need for a plan confirmation to have a final, definitive effect in chapter 11 does not necessarily apply to chapter 13.").  Section 1329(b)(1) incorporates (for plan modification) statutory provisions applicable to plan confirmation.  Section 1322(b)(2), applicable to plan modifications by virtue of § 1329(b), provides that the plan modification may modify the rights of secured creditors.  Section 1329(b)(1) also incorporates and makes applicable to plan modifications the statutory requirements for plan confirmation.  Thus, plan modifications pursuant to § 1329(a) must meet the standard for plan confirmation set out in § 1325(a).

Under § 1325(a), Ms. Smith, at the time of confirmation, was allowed to retain her vehicle, so long as she provided Americredit with the present value of its claim.  Put simply, she must provide for at least the *Till* interest rate on Americredit's remaining allowed secured claim in accordance with § 1325(a)(5)(B).

The following syllogism may help explain the issue:

- Americredit's contract's interest rate was subject to change in accordance with *Till* at confirmation; and

- A debtor may modify a plan so long as the requirements of confirmation are met; therefore,

- The contract interest rate may be changed through modification, so long as it complies with *Till*.

*See* 8 COLLIER ON BANKRUPTCY ¶ 1329.02 (Richard Levin & Henry J. Sommer eds., 16th ed) ("Because chapter 13 is completely voluntary, the debtor may propose any modified plan that satisfies the requirements of chapter 13. *Res judicata* does not bar such modifications by the debtor; the debtor often could achieve the same result by dismissing the case and filing a new chapter 13 case").

*Prejudice to the Creditor*

Section § 1329(a) provides for post-confirmation plan modifications "upon request of the debtor, the trustee, or the holder of an allowed unsecured claim . . . ." If Congress had intended to allow a secured creditor to make a post-confirmation plan modification, it could have said so. *See Ron Pair*, 489 U.S. at 241 ("[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" (quoting *Caminetti,* 242 U.S. at 485)). Americredit cites *Morrow* for the proposition that fairness is violated by not allowing a secured creditor to propose a modified plan. (ECF No. 64 at 9–11 (quoting *In re Morrow*, 397 B.R. 876 (Bankr. N.D. Ohio 2008)). Respectfully, *Morrow* erroneously attempts to substitute the Court's equitable judgment (it is not fair to allow a debtor to propose to modify a plan if the secured creditor cannot) with the determination made by Congress (a debtor may propose to modify a plan, but a secured creditor may not). This Court declines to repeat the error. It is this Court's duty to apply the statute as written. *Id.* Congress did not provide creditors with the ability to modify confirmed plans pursuant to § 1329(a).

   d.   *Trustee as Disbursing Agent*

Americredit disputes whether Ms. Smith's Modification may change the disbursing agent from the debtor to the trustee. (ECF No. 64 at 7–8). Americredit's argument hinges on the same res judicata and statutory interpretation principles detailed above. Specifically, Americredit

argues that the confirmed plan binds all parties and precludes the modification of the disbursing agent. Even as it makes this argument, Americredit "acknowledges that the Southern District Local Bankruptcy Rules do contemplate there will be some situation where the debtor may amend the plan to change from direct payments to payments through the trustee." (ECF No. 64 at 13). It notes, however, that "there is a distinct quid pro quo for such a change" in the form of adequate protection. (ECF No. 64 at 13).

The duties of a Chapter 13 Trustee include serving as the disbursing agent. *In re Mendoza*, 111 F.3d 1264, 1267 (5th Cir. 1982). The general rule is that debtors make monthly payments to the trustee, who then disburses the payments to the holders of allowed claims. 11 U.S.C. § 1326(b); *see In re Foster*, 670 F.2d 478, 486 (5th Cir. 1982) ("Nonetheless, § 1326(b) also 'makes it clear that the Chapter 13 trustee is normally to make distributions to creditors of the payments made under the plan by the debtor.'" (citations omitted)). The rationale for the preference is as follows: "(a) in order for consumer debtors to successfully reorganize, they need to be shielded from all their creditors so that they can focus on generating maximum income to pay the trustee; (b) in order for creditors to timely receive payment on their claims without having to spend undue time and expense, they need to avoid having to deal extensively with troubled borrowers and their attorneys; and (c) the trustee serves as a buffer between debtors and creditors by assuming the responsibility for receiving payments from debtors and remitting funds to claim holders." *In re Perez*, 339 B.R. 385, 389 (Bankr. S.D. Tex. 2006) (citations omitted).

The Bankruptcy Code, however, allows debtors to bypass the trustee and make payments directly to creditors. § 1326(b); *see Foster*, 670 F.2d at 486 ("Chapter 13 permits a debtor to act as a disbursing agent, subject to the bankruptcy court's 'feasibility' determination under 11 U.S.C. § 1325(a)(6)."). The Fifth Circuit, in deciding whether to allow a debtor to serve as a

disbursing agent for mortgage payments, found that "the provisions of Chapter 13 make it clear that the designation of the debtor as [] a disbursing agent is very much a matter left to the considered discretion of the bankruptcy court." *Id.*[6] "Direct disbursements by debtors is not an unqualified right; rather, it is a privilege." *Perez*, 339 B.R. at 390.

Americredit cites *In re Wruck*, 183 B.R. 862, 862 (Bankr. D.N.D. 1995) for the proposition that a confirmed plan cannot be modified to change the disbursing agent listed within the plan. The court in *Wruck* denied a debtors' motion to modify their plan post-confirmation to change the disbursing agent from the trustee to the debtors, given that (i) the change was not permissible under the Bankruptcy Code, and (ii) res judicata principles precluded the debtors from making the change sought. *Wruck*, 183 B.R. at 862. In *Wruck*, the debtors sought to modify their confirmed plan to allow them, as opposed to the trustee, to serve as the disbursing agent in order to "avoid the payment of the statutorily prescribed trustee's fees . . . ." *Id.* at 863. In doing so, the debtors sought to retroactively apply the Eighth Circuit's holding in *Wagner v. Armstrong* (*In re Wagner*), 36 F.3d 723 (8th Cir. 1994). The court in *Wagner* held that debtors could act as disbursing agents and "essentially self-administer their plans by making payments directly to creditors . . . ." *Wruck*, 183 B.R. at 864 (quoting *Wagner*, 36 F.3d at 727–28). The court in *Wruck* found that although debtors could modify their plans post-confirmation, the statute did not *explicitly* provide for the kind of change requested, and res judicata principles precluded changing the disbursing agent under the plan. *Wruck*, 183 B.R. at 865 (emphasis added). Notably, the court indicated that its ruling was not intended to preclude debtors from serving as a disbursing agent under a confirmed plan but, rather, "merely precluded [debtors]

---

[6] "Where a plan designates the debtor as disbursing agent with respect to current mortgage payments to be made under the plan, then, the bankruptcy court, in deciding whether to confirm the plan must determine whether the debtor will be able to make those payments and comply with the plan." *Foster*, 670 F.2d at 486. "It is primarily the trustee's duty to [e]nsure that payments are made under the plan and to supervise execution of the plan." *Id.* (citation omitted).

from avoiding the payment of the standing trustee's fees on payments made under the plan . . . ."
*Id*. at 866.  In essence, the court was concerned with how the modification at issue would affect
"the payment of [] Congressionally mandated trustee's fees."  *Id*. at 864.

       The concerns at issue in *Wruck*, however, are not present before this Court.  Contrary to
the facts in *Wruck*, Ms. Smith is attempting to change the disbursing agent from the debtor to the
trustee.  As noted previously, under the Bankruptcy Code it is normally the Chapter 13 Trustee
who is charged with making distributions to creditors of the payments provided for under the
plan.  *See Foster*, 670 F.2d at 486; *see also* § 1322(a)(2).  However, just as the Eighth Circuit did
in *Wagner*, the Fifth Circuit also held that debtors may, in certain circumstances, act as
disbursing agents under the plan.  *Id*.  The Fifth Circuit emphasized, however, that the
"designation of the debtor as [] a disbursing agent is very much a matter left to the considered
discretion of the bankruptcy court."  *Id*.; *see also Perez*, 339 B.R. at 390 ("Direct disbursements
by debtors is not an unqualified right; rather, it is a privilege.").

       This Court allowed Ms. Smith to act as the disbursing agent under the Plan for
Americredit's claim.  Ms. Smith, however, defaulted on her payments to Americredit and as a
consequence Americredit filed a motion to lift the stay.  (*See* ECF No. 43).  Ms. Smith's default
resulted in an agreed order to cure post-petition arrearages.  (*See* ECF No. 47).  Given the issues
previously encountered by the parties as demonstrated by Americredit's motion to lift the stay
and the necessity to subsequently enter into an agreed order, it is clear that Ms. Smith is no
longer qualified to serve as the disbursing agent over Americredit's claim.  By defaulting in her
disbursement obligation, she has lost the privilege to act as a disbursing agent under the Plan as
to Americredit's claim.  *See Foster*, 670 F.2d at 487–88 ("The continuation of the debtor as
disbursing agent may then be altered or eliminated by the court during the course of the plan if it

appears to the court . . . that such continuation will impair the debtor's ability to make all payments under, and to comply with, the plan.");[7] *see generally In re Thomas*, No. 18-50554-CAG, 2019 WL 413631, at * 7 (Bankr. W.D. Tex. Jan. 31, 2019) ("The Bankruptcy Court in the Western District of Texas has elected to follow the general rule under the code and have the Trustee serve as the disbursing agent in cases where a debtor is not current on their ongoing mortgage as of the petition date."). Modifying Ms. Smith's Plan from direct payments to payments made by the Trustee is in line with the Bankruptcy Code and subject to the discretion of the Court. *Foster*, 670 F.2d at 486; *see* § 1322(a).

## II. Adequate Protection under Rule 4001-1(e)(6)

Southern District of Texas Local Rule 4001-1(e) provides that "[i]n each chapter 13 case, the Court will issue an order that authorizes the use of estate vehicles under § 363 and provides adequate protection to the holders of liens on vehicles." BLR 4001-1(e). Bankruptcy Local Rule 4001-1(e)(1) provides the requirements for the adequate protection order. *See* BLR 4001-1(e)(1). As additional adequate protection, and pursuant to § 361(2), BLR 4001-1(e)(2) provides, in relevant part, that the "lien holder will be given and administrative claim, with priority under § 507(b), in an amount equal to 1.25% of the value of the vehicle for each 30 days that elapses from the date of the adequate protection order." BLR 4001-1(e)(2). When a debtor is required to make direct payments under the plan, it must comply with BLR 4001-1(e)(6), which provides:

---

[7] The court in *Foster* states that "the order of confirmation *may* include the qualification that the debtor is so designated as disbursing agent subject to further order of the court." *Foster*, 670 F.2d at 487 (emphasis added). Americredit argues that the quoted language "at least infer[s] that without such a provision in the confirmation order, such a change would not be allowed." (ECF No. 64 at 8). Americredit's argument is without force. In finding that a court *could* add the quoted language into a confirmation order, the court in *Foster* did not foreclose the possibility that the change could occur without a provision in the confirmation order, nor did it make the provision a requirement for a change in disbursing agent. In any event, it is transparently obvious that the Court could mandate the change as a condition of approving a proposed modified plan. *See* § 1322(a)(1).

> If a debtor proposes to make direct, post-petition payments to a lender on a vehicle loan that was not in default as of the petition date, no additional adequate protection payments are required, unless otherwise ordered by the Court.  If a debtor defaults on direct payments, the debtor must make a cash payment to the lien holder at or before the time of any plan modification.  The cash payment must equal or exceed 1.25% of the vehicles value (determined in the manner set forth in paragraph 4 above) for each one months of missed direct payments.

BLR 4001-1(e)(6).

On February 9, 2016, the Court approved an Order authorizing Ms. Smith the use of her vehicles pursuant to § 363, which included the 2016 Chrysler.  (*See* ECF No. 8).  The Order further provided for additional adequate protection in line with BLR 4001(e)(2).  Specifically, the Order indicates that "[t]he amount of the claim is equal to 1.25% of the value of the vehicle as of the petition date."  (ECF No. 8 at 1).  The parties filed a Joint Stipulation on March 29, 2019, in which they agreed:

> 1.      The total value of the 2016 Chrysler at the time the petition was filed was $28,000.00;
>
> 2.      Pursuant to the Court's Order, Americredit was entitled to a monthly payment of $350.00 as adequate protection;
>
> 3.      Ms. Smith missed four monthly payments while acting as the disbursing agent under the Plan; and
>
> 4.      Americredit is entitled to a lump sum payment of $1,400.00 in accordance with BLR 4001-1(e)(6).

(ECF No. 70 at 1).

In accordance with the parties' Joint Stipulation, Ms. Smith must make a $1,400.00 lump sum adequate protection payment to Americredit.

### III. The Modification became retroactively effective on the date of filing

Section 1329(b)(2) states that "the plan as modified becomes the plan unless, after notice and hearing, such modification is disapproved."  11 U.S.C. § 1329(b)(2).  This Court previously

determined when a plan modification becomes effective. *See In re Santillan*, No. 15-35753, 2018 WL 4674573 (Bankr. S.D. Tex. Sept. 26, 2018). In *Santillan,* after extensive analysis, this Court applied the Fifth Circuit's holding in *Meza*, and held that a post-confirmation modification is retroactively effective to the date of filing, after notice and hearing by the court. *Id*. at *3 (citing *Meza*, 467 F.3d at 878).

Here, Ms. Smith filed the proposed modification at issue on November 26, 2018. (*See* ECF No. 55). The Court approved Ms. Smith's Second Modification at a hearing held on December 13, 2018. (*See* ECF No. 62). In light of the Court's holding in *Santillan*, the modification is retroactively effective to November 26, 2018—the date the modification was filed. *Santillan*, 2018 WL 4674573, at * 3.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **April 25, 2019.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE